**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DAMON GOODLOE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 13 C 2650 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| STEPHANIE DORETHY, Warden | ) | |
| Hill Correctional Center,[1] | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

Petitioner Damon Goodloe, currently incarcerated at Hill Correctional Center, is serving

a thirty-year sentence for first degree murder.  Goodloe has petitioned this Court for a writ of

habeas corpus under 28 U.S.C. § 2254.  Both of Goodloe's jury instruction claims are

procedurally defaulted.  Although the Court reaches his Confrontation Clause and ineffective

assistance of counsel claims on the merits, Goodloe has not shown that the state court's decisions

on these issues were contrary to or an unreasonable application of clearly established federal law.

Thus, the Court denies Goodloe's petition.

## BACKGROUND

The Court will presume that the state court's factual determinations are correct for the

purposes of habeas review, as Goodloe has not pointed to clear and convincing evidence to the

contrary.  *See* 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002).  The

Court thus adopts the state court's recitation of the facts and begins by summarizing the facts

relevant to Goodloe's petition.

---

[1] Stephanie Dorethy is presently the warden at Hill Correctional Center and the Court substitutes her as
the proper Respondent in this matter.  *See* Rule 2(a) of the Rules Governing Section 2254 Cases in the
United States District Courts.

## I.     Goodloe's Trial and Conviction

In the early morning of December 24, 2002, Chicago Police Officers Joseph Hodges and Jason Venegas responded to a "shots fired" call at 113th Street and Edbrooke.  When the officers arrived, they found the victim, Pierre Jones, in the backyard.  Officer Hodges called an ambulance as two additional officers, Ronald Bialota and Michael Martinez, arrived at the scene. Officer Bialota asked Jones who shot him.  Jones replied, "Damon shot me."  Ex. A at 2.[2]  Jones also told the officers that Damon "was wearing a black hoodie."  *Id*.

Officers Hodges and Venegas remained with Jones while Officers Bialota and Martinez left to search for the offender.  After about a minute and a half, Officer Bialota testified that they saw Goodloe coming out of an alley near 114th Street and Prairie Avenue.  The officers stopped Goodloe—whose black hoodie was visible under his jacket—and checked him for a weapon and identification.  The officers did not find a weapon, but his identification card revealed that his name was Damon Goodloe.

Officers Bialota and Martinez detained Goodloe and brought him back to the shooting scene, where paramedics had begun treating Jones in an ambulance.  Officer Bialota asked Jones, "is this the individual that shot you?"  *Id*. at 3.  Jones said, "[t]hat's him, he's the one that shot me."  *Id*.  Officer Martinez asked Jones whether he was a hundred percent sure the person they brought was the one who shot him.  Jones confirmed, "[y]eah, that's the guy."  *Id*. at 5.  The police report, however, does not include Officer Martinez asking this question.

Officers arrested Goodloe and the State charged him with six counts of first degree murder and one count of aggravated battery with a firearm.  Before trial, Goodloe filed a motion to quash his arrest and suppress evidence, which the trial court denied after a hearing.  The court

---

[2] All references are to exhibits filed by Respondent as the state court record at Doc. 16.

found that the officers' initial stop and pat-down of Goodloe was based on reasonable suspicion, and that the officers had probable cause to arrest after they learned Goodloe's name.

Goodloe renewed his arguments in a motion *in limine* to exclude Jones' initial statements to the police and his later positive identification of Goodloe as the shooter. Goodloe argued the statements were hearsay, the dying declaration exception did not apply, and that permitting the out-of-court statements would violate his constitutional confrontation rights. The trial court denied the motion, finding that Jones' statements, although not dying declarations, were admissible under the excited utterance exception to the hearsay rule. The court also found that Jones' statements were not testimonial, and thus Goodloe's confrontation rights would not be violated by their admission into evidence.

At trial, numerous witnesses, including Officer Hodges, testified as to the circumstances surrounding Goodloe's arrest and Jones' statements. Further, the parties stipulated that Officer Samuel Jones would testify that he spoke with someone who identified herself as Danielle Lovett, and that she told him she observed two black males dressed in dark clothing appear from a vacant lot located at 11311 South Edbrooke and start shooting across the street. The parties further stipulated that Officer Jones would testify that Danielle Lovett never identified Goodloe as one of those individuals.

Michelle Lovett testified that she saw Goodloe around 1:00 a.m. on December 24, 2002 with another man—both wearing black hoodies—coming toward the vehicle in which she was sitting on South Edbrooke Avenue. She then heard at least ten gunshots but ducked before she could see Goodloe's hands, whether he had a gun, or whether he shot anyone. Lovett called 911 to report the shooting. She later identified Goodloe in a lineup at the police station as the person she had seen walking toward her friend's car. She acknowledged it was dark but noted that the

streetlights were on.  At Goodloe's cousin's request, Lovett later signed an affidavit stating that she did not see Goodloe at any time in the early morning hours of December 24, 2002.  She testified, however, that she signed the affidavit without reading it and "out of fear of [her] life." Ex. A at 7 (alteration in original).  She further testified that she had been shot at and threatened, but that upon signing the affidavit, she was left alone.  Finally, Lovett acknowledged that her sister's name was Danielle but testified that she did not remember ever telling police that her name was Danielle.

The forensic investigator assigned to the case testified that he administered a gunshot residue test to Goodloe at 5:15 a.m. on December 24, 2002.  A trace evidence analysis expert for the Illinois State Police analyzed the results and identified four unique gunshot residue particles and a significant number of consistent particles from the sample taken from the back of Goodloe's right hand.  The expert stated that Illinois State Police require three unique particles for test results to be considered positive for gunshot residue.  He acknowledged that being in an environment where a weapon is discharged could produce a positive test result and that particles could be transferred by contact.  Based on Goodloe's test results, the expert testified that Goodloe either fired the gun, contacted an item with gunshot residue on it, or his right hand was near a weapon when it was discharged.  Goodloe did not testify or present any evidence in his defense.

Over Goodloe's objection, the State tendered and the court gave the following jury instruction on accountability:

> A person is legally responsible for the conduct of another person when, either before or during the commission of an offense, and with the intent to promote or facilitate the commission of an offense, he knowingly solicits, aids, abets, agrees to aid, or attempts to aid the other person in the planning or commission of an offense.

Ex. A at 9–10.  The jury also received instructions on the definition and elements of first degree murder, which provided that Goodloe was responsible for first degree murder if his intentional or knowing act caused the death of the victim or another.  On June 21, 2006, the jury found Goodloe guilty of first degree murder but did not find that he personally discharged a firearm during the commission of that offense.

The trial court sentenced Goodloe to thirty years in prison.  During his sentencing hearing, Goodloe made a verbal motion for a new trial based on ineffectiveness of counsel, claiming his private counsel had failed to communicate with him.  The trial court allowed Goodloe's counsel to withdraw and appointed a public defender to further represent Goodloe.  The court then held a hearing on Goodloe's motion, eliciting testimony from Goodloe and his former counsel.  The trial court denied Goodloe's motion for a new trial, finding that counsel's decisions at trial related to investigating witnesses and impeaching Michelle Lovett constituted trial strategy and that Goodloe had not shown that counsel's decisions were unreasonable or prejudicial.

Goodloe also filed a post-trial motion for a new trial, in which he argued that because the jury did not find that he personally discharged the gun, it could only have found him guilty based on the accountability theory, on which he claimed there was no evidence.  The trial court denied Goodloe's motion, commenting that the jury performed an act of "mercy" on Goodloe by acquitting him of personally discharging the gun.  Ex. A at 12.

## II.    Direct Appeal

With the assistance of counsel, Goodloe appealed to the Illinois Appellate Court.  He raised the following claims: (1) that the admission of the victim's out-of-court statements violated his rights under the Confrontation Clause, (2) that the trial court erred when it instructed

the jury on accountability and transferred intent, (3) that his trial counsel was ineffective for failing to properly impeach Michelle Lovett and call Officer Jones as a witness, and (4) that the Illinois Appellate Court should vacate various fees and fines. On December 31, 2009, the Illinois Appellate Court affirmed Goodloe's conviction but vacated the fees that the trial court had assessed.

Goodloe then filed a petition for leave to appeal ("PLA") with the Illinois Supreme Court. In the PLA, Goodloe argued that the trial court erred in admitting the victim's out-of-court statements in violation of his confrontation rights and that his trial counsel had been ineffective in impeaching Michelle Lovett. The Illinois Supreme Court denied the PLA on March 24, 2010. Goodloe did not file a petition for a writ of certiorari with the United States Supreme Court.

## III.   State Post-Conviction Proceedings

Goodloe filed a timely *pro se* post-conviction petition pursuant to 725 Ill. Comp. Stat. § 5/122-1 on December 10, 2010.[3] He argued among other things that his trial counsel was ineffective for failing to investigate and call three witnesses—Maceo Lee, Shana Young, and Algeron McKinley—and for failing to adequately impeach Michelle Lovett. The trial court summarily dismissed the petition on February 10, 2011 without an evidentiary hearing.

Goodloe appealed to the Illinois Appellate Court. With the assistance of counsel, he argued that the trial court erred in dismissing his petition without an evidentiary hearing because he presented an arguable claim that trial counsel was ineffective for failing to investigate and call Lee, Young, and McKinley. The Illinois Appellate Court affirmed the dismissal of Goodloe's petition on December 21, 2012, finding that the issue was barred by *res judicata* and waiver.

---

[3] The petition was mailed on November 24, 2010.

Proceeding again *pro se*, Goodloe filed a PLA in which he argued that his trial counsel was ineffective for failing to investigate and call Lee, Young, and McKinley. The Illinois Supreme Court denied the PLA on March 27, 2013. Goodloe did not file a petition for a writ of certiorari with the United States Supreme Court.

In addition to pursuing traditional post-conviction relief, Goodloe also filed a motion for leave to file a petition for writ of habeas corpus with the Illinois Supreme Court on May 10, 2012, arguing that the jury had been improperly instructed on accountability and transferred intent. The Illinois Supreme Court denied Goodloe's motion on September 21, 2012.

## LEGAL STANDARD

A habeas petitioner is entitled to a writ of habeas corpus if the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court or if the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Court]." *Williams v. Taylor*, 529 U.S. 362, 404–05, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). An "unreasonable application" of federal law occurs if the state court correctly identified the legal rule but unreasonably applied the controlling law to the facts of the case. *See id.* at 407. Whether a state court's application of Supreme Court precedent is unreasonable is judged by an objective standard. *Id.* at 409; *Winston v. Boatwright*, 649 F.3d 618, 624 (7th Cir. 2011).

## ANALYSIS

Goodloe asserts five grounds for relief: (1) that the trial court erred when it instructed the jury on the theory of accountability, (2) that the trial court erred when it instructed the jury on transferred intent, (3) that the trial court's admission of the victim's out-of-court statements violated Goodloe's rights under the Confrontation Clause, (4) that trial counsel was ineffective for failing to adequately impeach Michelle Lovett, and (5) that trial counsel was ineffective for failing to investigate and call Lee, Young, and McKinley. Respondent argues that claims 1, 2, and 5 are procedurally defaulted or not cognizable on federal habeas review, and that claims 3 and 4 are meritless.

## I.     Procedural Default

A petitioner must fairly present his claims to all levels of the Illinois courts to avoid procedural default. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999). To be "fairly presented," a claim must be brought forth on one complete round of state court review, either on direct appeal or in post-conviction proceedings. *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). In Illinois, this means appeals up to and including the filing of a PLA to the Illinois Supreme Court. *O'Sullivan*, 526 U.S. at 845–46; *Duncan v. Hathaway*, 740 F. Supp. 2d 940, 945 (N.D. Ill. 2010). When a petitioner has failed to present his federal claim to the state courts and the opportunity to raise that claim has subsequently passed, the petitioner has procedurally defaulted the claim and it is not available for federal habeas review. *Gonzales v. Mize*, 565 F.3d 373, 380 (7th Cir. 2009).

A petitioner may nonetheless pursue a procedurally defaulted claim if he can establish cause for the default and actual prejudice as a result of the alleged violation of federal law or can demonstrate that the court's failure to consider the claim will result in a fundamental miscarriage

of justice. *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *Johnson v. Loftus*, 518 F.3d 453, 455–56 (7th Cir. 2008). Cause exists where "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 283 n.24, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999) (citation omitted) (internal quotation marks omitted). Prejudice exists where the petitioner shows that the violation of his federal rights "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Lewis*, 390 F.3d at 1026 (quoting *United States v. Frady*, 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982)). The fundamental miscarriage of justice exception is "limited to situations where the constitutional violation has probably resulted in a conviction of one who is actually innocent." *Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002). This requires new, reliable evidence of the petitioner's innocence in light of which "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Woods v. Schwartz*, 589 F.3d 368, 377 (7th Cir. 2009) (quoting *Schlup v. Delo*, 513 U.S. 298, 329, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)).

### A.    Jury Instruction Claims (Claims 1 and 2)

Goodloe did not present claims 1 and 2 through one complete round of state court review. Goodloe objected to the accountability instruction at trial and argued on his direct appeal that the trial court should not have instructed the jury on accountability or transferred intent. He did not include those claims in his direct appeal PLA, however. Similarly, he did not include the jury instruction claims in his post-conviction petition. Goodloe did, however, include his claims regarding the jury instructions in a motion seeking leave to file a writ of habeas corpus with the Illinois Supreme Court.

Goodloe's filings on his jury instruction claims on his direct appeal are not sufficient to avoid procedural default because he never raised the claims in his PLA. *See Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (to avoid procedural default by way of direct appeal, "a petitioner must have directly appealed to the Illinois Appellate Court and presented the claim in a petition for leave to appeal to the Illinois Supreme Court"). Although Goodloe argues he met the fair presentment requirement by seeking leave to file a writ of habeas corpus with the Illinois Supreme Court, such a request does not satisfy the fair presentment requirement. *See United States ex rel. Keller v. McCann*, 553 F. Supp. 2d 1002, 1013 (N.D. Ill 2008) ("A habeas petitioner cannot exhaust a claim by raising it for the first time in a request for discretionary review with the State's highest court."); *United States ex rel. Walton v. Barnett*, No. 2001 C 6023, 2001 WL 1519421, at *6 (N.D. Ill. Nov. 29, 2001) ("Presenting federal claims for the first time in a discretionary petition addressed to the state's highest court will not satisfy the fair presentment requirement for federal habeas purposes, and results in a procedural default."). Moreover, a state habeas petition is limited to jurisdictional challenges and does not include the due process issues Goodloe was seeking to raise. *See United States ex rel. Shelton v. Cook County Jail Exec. Dir.*, No. 12 C 4664, 2012 WL 2374709, at *4 (N.D. Ill. June 20, 2012) ("[C]onstitutional claims cannot be brought in an Illinois habeas corpus proceeding[.]"); *Hughes v. Kiley*, 367 N.E.2d 700, 702–03, 67 Ill. 2d 261, 10 Ill. Dec. 247 (1977) (alleged denial of due process could not be reviewed by way of petition for writ of habeas corpus). Thus, Goodloe's filing of a motion for leave to file a writ of habeas corpus before the Illinois Supreme Court does not meet the fair presentment requirement and he has procedurally defaulted the jury instruction claims.[4]

---

[4] Because Goodloe procedurally defaulted the jury instruction claims, the Court need not address Respondent's alternative argument that these claims raise no federal constitutional violation.

**B.      Ineffective Assistance of Counsel for Failure to Investigate and Call Witnesses (Claim 5)**

Goodloe argues that his trial counsel was ineffective for failing to investigate and call three defense witnesses—Lee, Young, and McKinley—who would have provided an innocent explanation for his presence blocks away from the scene of the crime.  Although Respondent argues that Goodloe did not present his claim with respect to Lee and McKinley to all three levels of the Illinois courts because the Illinois Appellate Court on post-conviction review found that the claim was barred by *res judicata*, this does not change the fact that Goodloe included this claim in his post-conviction petition, appeal, and PLA.  *See Patrasso v. Nelson*, 121 F.3d 297, 301 (7th Cir. 1997) ("*Res judicata*, however, is not a bar to consideration of claims in a federal habeas action.  '[F]ederal review is precluded only by procedural forfeitures, not by *res judicata* concerns.'" (alteration in original) (citations omitted)).  Thus, the Court will proceed to analyze Goodloe's claim on the merits as to Lee and McKinley.

Respondent further argues that Goodloe has procedurally defaulted his claim with respect to Young because the state court's decision on that claim rests on an independent and adequate state ground.  A claim is procedurally defaulted if the state court clearly and expressly decided it on a state procedural ground.  *Lee v. Foster*, 750 F.3d 687, 693 (7th Cir. 2014) ("[W]e will not entertain questions of federal law in a habeas petition when the state procedural ground relied upon in the state court 'is independent of the federal question and adequate to support the judgment.'" (quoting *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991))).  The Illinois Appellate Court, in reviewing the dismissal of Goodloe's post-conviction petition, found that Goodloe waived his claim of trial counsel's ineffectiveness for failure to investigate and call Young because he could have raised it during post-trial proceedings or on direct appeal but did not.  Waiver is an adequate state ground for purposes of

barring federal habeas review. *See Richardson v. Lemke*, 745 F.3d 258, 271–72 (7th Cir. 2014) (Illinois waiver rule is an adequate state law ground). Here, however, the Illinois Appellate Court continued to address the merits of Goodloe's claim:

> Additionally, defendant's allegations in the post-conviction petition and the statements in his girlfriend's affidavit attached to his petition indicate that she was not with defendant when he was in the area of the shooting, thus she would not have been an alibi witness. It follows then that counsel was not ineffective for failing to call a witness who could not contribute to the defense theory of the case and whose testimony was not exculpatory.

Ex. G at 7–8.

"[I]n order to foreclose review on habeas, the state court must actually state in plain language that it is basing its decision on the state procedural default and that other grounds are reached only in the alternative." *Jenkins v. Nelson*, 157 F.3d 485, 491 (7th Cir. 1998). The Illinois Appellate Court arguably based its decision on both procedural and substantive grounds, as there was no explicit language that its discussion of the substance of Goodloe's ineffective assistance of counsel claim was merely in the alternative. *See* Ex. G at 7 (using "additionally" to introduce its substantive discussion of Goodloe's claim). Because the language of the opinion is not clear, the Court will address the merits of Goodloe's claim. *Jenkins*, 157 F.3d at 491 (reaching merits of claim where there was no "clear statement of intent by the state court" to rely on procedural default and to reach the merits of the federal claim only in the alternative); *cf. Romero v. Battles*, 234 F.3d 1273 (Table), 2000 WL 1206691, at *3 (7th Cir. 2000) (claim procedurally defaulted where state court prefaced analysis by stating "even if we considered the merits"); *Stevenson v. Gaetz*, No. 11 C 4394, 2013 WL 1385557, at *3 (N.D. Ill. Apr. 3, 2013) (claim procedurally defaulted where state court prefaced discussion of merits by stating "assum[ing], arguendo, that defendant had not [forfeited the claim]" (second alteration in original)); *United States ex rel. Wyatt v. Atchison*, 920 F. Supp. 2d 894, 898–99 (N.D. Ill. 2013)

(habeas review precluded where state court addressed merits with preface "[w]aiver notwithstanding" (alteration in original)).

In his reply, Goodloe also contends that his post-trial counsel was ineffective for failing to call Lee, Young, and McKinley at the hearing on his motion for a new trial. Goodloe did not raise this claim in his § 2254 petition, which only alleged that his trial counsel was ineffective for not calling these witnesses. Thus, this Court could determine that Goodloe has waived the claim with respect to post-trial counsel. *See Gonzales v. Mize*, 565 F.3d 373, 382 (7th Cir. 2009); *White v. United States*, No. 12 C 50272, 2013 WL 1499182, at *3 n.1 (N.D. Ill. Apr. 11, 2013). Putting aside waiver, the Court finds that Goodloe has procedurally defaulted this claim because Goodloe did not raise the claim in his post-conviction petition in the state trial court, raising it for the first time in appealing the dismissal of his post-conviction petition and then in his PLA. *See* Ex. G at 8 (finding that Goodloe's claim that his post-trial counsel was ineffective was "waived because the issue was not raised in his post-conviction petition"). Because Goodloe did not raise that claim on one complete round of state court review, he has procedurally defaulted it. *Lewis*, 390 F.3d at 1025.

## C. Exceptions to Procedural Default

Goodloe can nonetheless proceed on his procedurally defaulted claims if he can establish cause and prejudice for the default or that the Court's failure to consider the claim would result in a fundamental miscarriage of justice. *Johnson*, 518 F.3d at 455–56. Goodloe does not present any argument for why the Court should excuse default of his ineffective assistance of post-trial counsel claim, and thus the Court will not consider that claim further. *See Crockett v. Hulick*, 542 F.3d 1183, 1193 (7th Cir. 2008). In reply to Respondent's answer, Goodloe argues that the ineffectiveness of his appellate counsel resulted in the failure to raise his jury instruction claims

in his direct appeal PLA. "Ineffective assistance of counsel . . . is cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986). However, Goodloe's claim of ineffective assistance of counsel needs to have been "presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Id*. at 489; *Toliver v. Pfister*, No. 13 C 8679, 2014 WL 4245788, at *4 (N.D. Ill. Aug. 27, 2014). Goodloe did not argue in his post-conviction proceedings that his appellate counsel was ineffective for failing to raise the jury instruction issue in his direct review PLA. Thus, he has procedurally defaulted that claim as well. *See Toliver*, 2014 WL 4245788, at *4. Nor does Goodloe provide any basis for the Court to find cause or prejudice to excuse that procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 453, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000) (ineffective assistance asserted as cause for procedural default may itself be excused from procedural default if cause and prejudice is shown). Thus, the Court cannot consider Goodloe's defaulted jury instruction claims.

## II.     Non-Defaulted Claims

### A.     Admission of Jones' Out-of-Court Statements (Claim 3)

Goodloe argues that Jones' statements identifying Goodloe as the shooter were testimonial in nature, and thus the Sixth Amendment barred their admission under the Supreme Court's decisions in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), and *Davis v. Washington*, 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006). Respondent argues that the Illinois Appellate Court's decision on the merits of this claim was not contrary to nor an unreasonable application of clearly established federal law.

The Confrontation Clause of the Sixth Amendment provides a criminal defendant with the right to confront adverse witnesses. U.S. Const. amend. VI. The Confrontation Clause bars

the admission of all testimonial statements against the defendant unless the declarant is both unavailable at trial and the defendant had a prior opportunity to cross-examine the declarant. *Crawford*, 541 U.S. at 68. But the Confrontation Clause does not cover statements that are not considered testimonial. *Id.* Because it is undisputed that Jones was unavailable at trial and that Goodloe did not have a prior opportunity to cross-examine Jones, the critical issue in determining whether the admission of Jones' statements violated the Confrontation Clause is whether those statements were testimonial in nature.

Statements made in the course of police interrogations are generally considered testimonial "when the circumstances objectively indicate that there is no . . . ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.* at 52; *Davis*, 547 U.S. at 822; *see also Crawford*, 541 U.S. at 52. There are exceptions, however: "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis*, 547 U.S. at 822.

After examining the circumstances surrounding Jones' statements and surveying the relevant law, including *Crawford* and *Davis*, the Illinois Appellate Court concluded that Jones' statements were not testimonial. Goodloe challenges this conclusion, but he has not demonstrated that the state court's rejection of his Confrontation Clause claim was contrary to or an unreasonable application of clearly established federal law under *Crawford* or *Davis*. The Illinois Appellate Court carefully considered the Confrontation Clause issue and correctly identified *Crawford* and *Davis* (and its companion case *Hammon v. Indiana*, which was decided in the same opinion as *Davis*) as the relevant Supreme Court cases setting forth the applicable

legal principles. The Illinois Appellate Court then compared the facts of those cases to Jones'

statements. The Supreme Court in *Davis* concluded that a victim's statements to a 911 operator

were not testimonial because they were made during an ongoing emergency where the victim

was seeking "help against [a] bona fide physical threat." 547 U.S. at 827–28. In *Hammon*, on

the other hand, the Supreme Court found that the declarant's statements were testimonial because

police officers arrived at the scene and took those statements only after the reported domestic

disturbance had ended, when there was no ongoing emergency and both persons involved in the

domestic disturbance were under police control. *Id*. at 829–30. The Illinois Appellate Court

compared the statements in *Davis* and *Hammon* to those made by Jones. As in *Davis*, the court

found that Jones made his statements during an ongoing emergency, with police "concerned that

an armed criminal suspect was at large nearby." Ex. A at 24. The court distinguished *Hammon*,

where the statements were made in response to formal questioning after the emergency was over,

*Davis*, 547 U.S. at 830. Unlike in *Hammon*, Jones' statements were given informally to police

officers before and after those officers conducted a search for an armed suspect who remained a

threat to the wider community. Finally, the Illinois Appellate Court concluded that Jones'

second statement did not become testimonial just because Goodloe had been apprehended, as the

emergency continued to exist at that time with the police unsure that they had the right person

and with another shooter still at large.

Although Goodloe quibbles with the Illinois Appellate Court's interpretation of *Davis*

and *Hammon*, he does not cite any cases that reach the opposite result on materially

indistinguishable facts nor has he demonstrated that the court's application of *Davis* and

*Hammon* was "objectively unreasonable." Indeed, subsequent Supreme Court precedent

undermines any such argument. *See Michigan v. Bryant*, 562 U.S. 344, 131 S. Ct. 1143, 179 L.

Ed. 2d 93 (2011).[5]  In *Bryant*, Michigan police officers responded to an emergency call and arrived at a gas station parking lot to find a man lying on the ground suffering from a gunshot wound.  *Id.* at 349.  The officers asked the victim "what had happened, who had shot him, and where the shooting had occurred."  *Id.* (citation omitted) (internal quotation marks omitted).  He stated that "Rick," the defendant, shot him, and gave further details regarding the shooting.  *Id.* The victim died within hours.  *Id.*  Although the police searched for the defendant at the time, they only located defendant a year later in a different state.  *Id.* at 349–50, 374.  At trial, the police officers testified to the victim's statements in the gas station parking lot.  *Id.* at 350.  The Supreme Court considered the facts surrounding the victim's statements to determine whether they were made in the context of an ongoing emergency.  *Id.* at 374–76.  The Supreme Court reiterated that "the ultimate inquiry is whether the 'primary purpose of the interrogation [was] to enable police assistance to meet [the] ongoing emergency.'"  *Id.* at 374 (quoting *Davis*, 547 U.S. at 822).  It found that the primary purpose of the questioning in *Bryant* was indeed to help police meet an ongoing emergency, as at the time of the questioning, the defendant's motive and location were unknown and the victim was severely injured.  *Id.* at 375–77.  Thus, the victim's statements were not considered testimonial.  *Id.* at 378.

In finding Jones' statements nontestimonial and their admission in Goodloe's trial proper, the Illinois Appellate Court applied virtually the exact analysis as in *Bryant*.  According to the Illinois Appellate Court:

> The victim was interrogated in a [*sic*] emergency setting when
> police responded to a call of "shots fired" and found the victim on
> the ground with a bullet wound and in obvious pain.  The police
> were concerned that an armed criminal suspect was at large
> nearby.  The purpose of the police questioning enabled police

---

[5] Although decided after the Illinois Appellate Court's decision, *Bryant* did not establish new law but only "elucidated" the standards set forth by the Supreme Court in *Crawford* and *Davis*.  *See Alvarez v. Ryan*, No. CV 11-98-TUC-FRZ JJM, 2014 WL 1152886, at *15 (D. Ariz. Mar. 21, 2014).

assistance to meet an ongoing emergency and protect the public
from the armed shooter.

. . . .

. . . . We cannot say that the emergency had concluded because the
police needed a description of the offender to protect the public.

. . .

In addition, we cannot say that the subsequent questioning of the
deceased victim at the ambulance was formal and testimonial.
Here the emergency was ongoing because, according to the record,
there were at least two shooters and the police had apprehended
just one suspect. The police needed the victim to identify the
suspect to aid in ending the emergency. Even with the
apprehension of one suspect, a second shooter remained at large
keeping the emergency alive.

Ex. A at 24–25, 27 (citations omitted). Given the circumstances, it was reasonable for the

Illinois Appellate Court to find that the primary purpose of the questioning was to enable police

assistance to meet the ongoing emergency, making Jones' statements non-testimonial. *See*

*Bryant*, 562 U.S. at 375–77. Thus, the Illinois Appellate Court's decision on the Confrontation

Clause issue was not contrary to or an unreasonable application of clearly established federal

law.

> **B.      Ineffective Assistance of Trial Counsel for Failure to Adequately Impeach
> Michelle Lovett (Claim 4)**

Goodloe also argues that his trial counsel was ineffective for failing to adequately

impeach Michelle Lovett. Specifically, he contends that his trial counsel should have called

Officer Jones instead of stipulating to his testimony and that trial counsel failed to lay an

adequate foundation while cross-examining Lovett so as to allow for further impeachment on her

prior failure to identify Goodloe as being present at the scene of the crime. The Illinois

Appellate Court rejected this claim on direct appeal. Goodloe cannot show that the Illinois

Appellate Court's decision on the merits regarding this claim was contrary to, or an unreasonable application of, clearly established federal law.

As the Illinois Appellate Court correctly identified, in order to establish constitutionally ineffective assistance of counsel, Goodloe must show (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In considering the first prong, the Court indulges "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and may not let hindsight interfere with its review of counsel's decisions. *Id.* at 689. For the second prong, a "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* at 694. This means a "substantial," not just "conceivable," likelihood of a different outcome in the case. *Cullen v. Pinholster*, 563 U.S. 170, 189, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011) (quoting *Richter*, 131 S. Ct. at 792). The Court need not address both prongs of the *Strickland* test if one provides the answer; that is, if the Court determines that the alleged deficiency did not prejudice Goodloe, it need not consider the first prong. *Ruhl v. Hardy*, 743 F.3d 1083, 1092 (7th Cir. 2014). In reviewing the Illinois Appellate Court's decision, the Court must apply a "'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15, 134 S. Ct. 10, 13, 187 L. Ed. 2d 348 (2013) (quoting *Cullen*, 131 S. Ct. at 1403).

Goodloe has not shown that the Illinois Appellate Court was unreasonable in rejecting his claim and finding that he satisfied neither prong of the *Strickland* test. Goodloe argues that it was objectively unreasonable for his trial counsel to not call Officer Jones to the witness stand

and to fail to lay an adequate foundation during the cross-examination of Michelle Lovett so as to impeach her with another report. The Illinois Appellate Court cited two Illinois Supreme Court cases for the proposition that the decision not to cross-examine or impeach a witness is generally "a matter of trial strategy which will not support a claim of ineffective assistance of counsel." *People v. Pecoraro*, 677 N.E.2d 875, 891, 175 Ill. 2d 294, 222 Ill. Dec. 341 (1997); *see* Ex. A at 40 (citing *Pecoraro*, 677 N.E.2d at 890–91, and *People v. Franklin*, 656 N.E.2d 750, 759, 167 Ill. 2d 1, 212 Ill. Dec. 153 (1995)). The court concluded that the stipulation regarding Officer Jones' testimony that Lovett did not identify Goodloe to him by name established the extent of Officer Jones' testimony, making the additional value of calling Officer Jones minimal. The court also found counsel's failure to lay a foundation with Lovett so as to introduce additional police reports to discredit her placement of Goodloe at the scene was not objectively unreasonable because there was other evidence of Goodloe's presence at the scene. Thus, in the court's view, the decision not to further impeach Lovett with these reports was not problematic and did not prejudice Goodloe. The court found that the evidence was "so overwhelming" that even if counsel's actions were considered objectively unreasonable, the result of Goodloe's trial would not have been different. Ex. A at 42.

Given the circumstances surrounding Lovett's testimony, the fact that the stipulation did not have impeachment value, Jones' identification of Goodloe as the shooter, and other testimony that placed Goodloe at or near the scene of the crime, the Court finds that the Illinois Appellate Court did not unreasonably apply *Strickland* to Goodloe's ineffectiveness claim regarding counsel's alleged failure to adequately impeach Lovett. *See United States ex rel. Jones v. Harrington*, No. 13 C 3838, 2014 WL 859532, at *8–9 (N.D. Ill. Mar. 3, 2014) (appellate

court decision was not unreasonable with respect to counsel's alleged failure to impeach a witness).

C.      **Ineffective Assistance of Counsel for Failure to Investigate and Call Witnesses (Claim 5)**

Finally, the Court considers Goodloe's argument that his trial counsel was ineffective for failing to investigate and call Lee, Young, and McKinley.  In addressing Goodloe's post-conviction petition, the Illinois Appellate Court found that, with respect to Lee and McKinley, the claim was barred by *res judicata* because the trial court had decided this claim on the merits during the post-trial hearing.  Moreover, the court stated that "[t]rial counsel cannot be deemed ineffective for failing to investigate witnesses because the affidavits [Lee and McKinley submitted] do not provide an alibi for defendant and in fact, such testimony might have been damaging to defendant's theory of the case."  Ex. G at 6–7.  With respect to Young, in addition to finding the claim waived, the court found that Young was not an alibi witness and that therefore "counsel was not ineffective for failing to call a witness who could not contribute to the defense theory of the case and whose testimony was not exculpatory."  Ex. G at 8.

The Court cannot find that the Illinois Appellate Court's conclusions were contrary to or an unreasonable application of clearly established federal law.  The Illinois Appellate Court concluded that Goodloe cannot prove that he was prejudiced by the failure to call these witnesses, where their testimony was not exculpatory and could have been damaging.  Goodloe has not established why the Illinois Appellate Court was wrong in finding that their testimony would not have been helpful to his case.  And the Illinois Appellate Court's conclusion is bolstered by the facts of the case, where the victim identified Goodloe as the shooter, not only by name but also in person, Goodloe was found with gunshot residue on his hands, and disinterested eyewitness testimony placed him at the scene of the crime.  *See Strickland*, 466 U.S. at 696 ("[A]

verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."). This evidence distinguishes Goodloe's case from that in *Campbell v. Reardon*, a recent Seventh Circuit decision in which counsel was found ineffective for failing to investigate witnesses, for in that case there was no physical evidence linking the petitioner to the crime and the eyewitness testimony (much of it coming from biased witnesses) was weak. 780 F.3d 752, 768–70 (7th Cir. 2015). Thus, even if counsel's performance could have been better, the Court cannot find prejudice, particularly under the "doubly deferential" standard that must be applied here. *See Morales v. Johnson*, 659 F.3d 588, 600–02 (7th Cir. 2011) (although counsel's performance was deficient, it did not prejudice petitioner where the prosecution presented two eyewitnesses and their testimony was corroborated by physical evidence). Thus, Goodloe's challenge regarding his counsel's failure to investigate and call Lee, Young, and McKinley as witnesses fails.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the Court must issue or deny a certificate of appealability when it enters a final order adverse to a petitioner. A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (citing 28 U.S.C. § 2253(c)(2)). To make a substantial showing, the petitioner must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983)). The requirement of a certificate of

appealability is a threshold issue and a determination of whether one should issue neither requires nor permits full consideration of the factual and legal merits of the claims. "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Miller-El*, 537 U.S. at 342.

For the reasons stated above, the Court finds that there can be no showing of a substantial constitutional question for appeal, as reasonable jurists would not find this Court's rulings debatable. *See Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011) (citing *Slack*, 529 U.S. at 484–85). Accordingly, the Court declines to issue a certificate of appealability.

## CONCLUSION

For the foregoing reasons, Goodloe's petition for a writ of habeas corpus pursuant to 22 U.S.C. § 2254 is denied and the Court declines to certify any issues for appeal under 28 U.S.C. § 2253(c).

Goodloe is advised that this is a final decision ending his case in this Court. If Goodloe wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Goodloe need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. Motions for reconsideration serve a limited purpose and are only appropriate to bring to the Court's attention a manifest error of law or fact or newly discovered evidence. *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000). A motion for reconsideration "is not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment." *County of McHenry v. Ins. Co. of the W.*, 438 F.3d 813, 819 (7th Cir. 2006) (citation omitted) (internal quotation marks omitted); *see also Matter of Reese*, 91 F.3d 37, 39 (7th Cir. 1996) (a

Rule 59(e) motion does not "enable a party to complete presenting his case after the court has ruled against him" (quoting *Frietsch v. Refco, Inc.*, 56 F.3d 825, 828 (7th Cir. 1995))).

However, if Goodloe wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).


Dated: August 14, 2018

_____
SARA L. ELLIS
United States District Judge